1

2

3

4

5

6

7             UNITED STATES DISTRICT COURT

8                  DISTRICT OF NEVADA

9                        * * *

10   SECURITIES AND EXCHANGE          )
     COMMISSION,                      )

11                                    )
                    Plaintiff,        )        2:10-CV-2166-PMP-CWH
12                                    )
     v.                              )

13                                    )
     MARCUS A. LUNA; NATHAN          )        ORDER AND
14   MONTGOMERY; ADAM DASKIVICH;     )        PERMANENT INJUNCTION
     DAVID MURTHA; ST. PAUL VENTURE  )
15   FUND, LLC; MINNESOTA VENTURE    )
     CAPITAL, INC.; REAL ESTATE OF   )
16   MINNESOTA, INC.; and MATRIX     )
     VENTURE CAPITAL, INC.,          )
17                                    )
                    Defendants.       )
18   _____)

19           Presently before the Court is the Opening Brief in Support of Plaintiff Securities

20   and Exchange Commission's Request for Remedies (Doc. #109), filed on March 14, 2014.

21   Defendants Nathan Montgomery and Minnesota Venture Capital, Inc. filed an Opposition

22   Brief (Doc. #112) on April 17, 2014.  Defendants Marcus Luna and St. Paul Venture Fund

23   filed an Opposition Brief (Doc. #113) on April 17, 2014.  Defendants Adam Daskivich;

24   Real Estate of Minnesota, Inc.; David Murtha; and Matrix Venture Capital, Inc. filed an

25   Opposition Brief (Doc. #114) on April 18, 2014.  Plaintiff Securities and Exchange

26   Commission filed a Reply Brief (Doc. #115) on May 2, 2014.

## I. BACKGROUND

This is a civil enforcement action brought by the Securities and Exchange Commission ("SEC") against four individuals, Defendants Marcus Luna ("Luna"), Nathan Montgomery ("Montgomery"), Adam Daskivich ("Daskivich"), and David Murtha ("Murtha"), and their respective entities, Defendants St. Paul Venture Fund, LLC; Minnesota Venture Capital, Inc.; Real Estate Minnesota, Inc.; and Matrix Venture Capital, Inc. The Court set out the factual background of this case in a prior Order, and the Court will not repeat the facts here except where necessary. (Order (Doc. #108).) The Court previously granted the SEC's Motion for Summary Judgment, finding no genuine issues of material fact remained that Defendants each violated Section 5 of the Securities Act, and that Defendant Luna violated Sections 17(a)(1), (2), and (3) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5. The Court then ordered the parties to further brief the issue of what remedies were appropriate given Defendants' violations. (Id.)

SEC now seeks as remedies a permanent injunction enjoining Defendants from violating the federal securities laws, disgorgement of Defendants' profits plus prejudgment interest, civil penalties, a bar on Defendants participating in an offering of penny stocks in the future, and a bar on Luna providing professional legal services in connection with an offer or sale of securities purportedly exempt from the registration requirements. Defendants oppose the requested remedies.

## II. DISCUSSION

### A. Permanent Injunction

SEC contends a permanent injunction enjoining Defendants from violating Sections 5(a) and (c) of the Securities Act, and enjoining Defendant Luna from violating Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5 is appropriate. SEC asserts an injunction is appropriate because Defendants are likely to engage in future violations of the securities laws. SEC contends Defendants acted at least

recklessly, their conduct was not isolated, Defendants have not recognized the wrongful nature of their conduct, Defendants' occupations suggest they will remain involved in the securities markets, and Defendants have not offered assurances they will not engage in future violations.

To obtain a permanent injunction, the SEC bears the burden of showing there is "a reasonable likelihood of future violations of the securities laws." S.E.C. v. M & A West, Inc., 538 F.3d 1043, 1055 (9th Cir. 2008) (quoting S.E.C. v. Murphy, 626 F.2d 633, 655 (9th Cir. 1980)).  The Court evaluates the likelihood of future violations based on (1) past violations, (2) the degree of scienter involved, (3) whether the present violation was isolated or recurrent, (4) whether the defendant recognizes the wrongful nature of his conduct, (5) "the likelihood, because of defendant's professional occupation, that future violations might occur," and (6) "the sincerity of his assurances against future violations." Murphy, 626 F.2d at 655.  The inquiry is based on "the totality of the circumstances surrounding the defendant and his violations." Id.

### 1.  The Luna Defendants

Defendants Luna and St. Paul Venture Fund LLC (the "Luna Defendants") do not oppose a permanent injunction from future securities law violations.  (Defendants' Marcus Luna & St. Paul Venture Fund Opp'n to Pl.'s Request for Remedies (Doc. #113) ["Luna Opp'n"] at 8.)  The likelihood that Luna will commit future violations supports the imposition of a permanent injunction.  Luna acted with a high degree of scienter, as set forth in the Court's prior Order (Doc. #108).  Luna does not recognize the wrongful nature of his conduct, as demonstrated by his Opposition Brief which continues to assert that Luna properly opined on the nature of the transactions at issue in this case.  (Luna Opp'n at 2-4.)  Due to Luna's occupation as an attorney, and his argument that a legal services bar is inappropriate because it will negatively impact his ability to earn a livelihood, future violations are likely to occur.  (Id. at 8-9.)  Finally, Luna offers no assurances against future

violations.

Nevertheless, the Court concludes the more targeted injunctions discussed below barring the Luna Defendants from participating in future penny-stock offerings and barring Luna from certain legal work are more appropriate than the general injunction against any Section 5, Section 17, Section 10, or Rule 10b-5 violation that the SEC requests.  To the extent Luna violates these provisions unrelated to the penny-stock and legal services bars, he may face prosecution or enforcement actions for any future violations regardless of whether the Court imposes a permanent injunction barring him from further securities law violations.  The Court therefore will decline to impose a permanent injunction from future Section 5, Section 17, Section 10, or Rule 10b-5 violations as to the Luna Defendants.

## 2.  The Montgomery Defendants[1]

Defendants Montgomery and Minnesota Venture Capital, Inc. (the "Montgomery Defendants") respond that a permanent injunction is inappropriate as to them because there was no finding at summary judgment that Montgomery acted with scienter, and he did not act with scienter because he relied on Luna's advice.  The Montgomery Defendants further argue the violation was isolated because there is no evidence Montgomery previously acted as a statutory underwriter in a public offering, and there is no basis to conclude he will do so in the future.  The Montgomery Defendants assert Montgomery no longer works in the securities field, has no desire to again risk criminal and civil proceedings, and Montgomery has provided a certification attesting that he will not violate the securities laws again.

The violation at issue in this case is not isolated as to Montgomery.  He has been convicted of one count of conspiracy to commit securities fraud and wire fraud in a separate criminal proceeding.  (Defs. Nathan Montgomery & Minnesota Venture Capital, Inc.'s Br.

---

[1]  The Montgomery Defendants request the Court stay ruling on this matter until the appeal in Montgomery's related conviction is resolved.  The Court declines to indefinitely delay resolution of this case.

1  in Opp'n (Doc. #112) ["Montgomery Opp'n"], Certification of Nathan Montgomery

2  ("Montgomery Certification") at 3); see also United States v. Curshen, No. 1:11-CR-20131-

3  RWG, S.D. Fla., Jury Verdict (Doc. #262).  This factor weighs in favor of granting a

4  permanent injunction.

5      As to the degree of scienter, a Section 5 violation does not require any scienter.

6  S.E.C. v. CMKM Diamonds, Inc., 729 F.3d 1248, 1256 (9th Cir. 2013).  Because the SEC

7  brought only a Section 5 claim against the Montgomery Defendants, the SEC did not

8  request, and the Court did not rule as a matter of law at summary judgment, that the

9  Montgomery Defendants acted with scienter.  The evidence presented at the summary

10  judgment stage would support a finding that Montgomery acted at least recklessly.  As

11  detailed in the Court's prior Order, the Montgomery Defendants engaged in lockstep

12  coordinated activity in multiple steps within a short time frame with the other Defendants to

13  distribute their unregistered Axis Technologies Group, Inc. stock to the uninformed public.

14  (Order (Doc. #108) at 2-9, 18-22.)  Additionally, the Court concluded the SEC was entitled

15  to an adverse inference against the Montgomery Defendants regarding whether they

16  acquired the Axis Technologies Group, Inc. shares with a view to distribute those shares.

17  (Id. at 18-20.)

18      Montgomery states in his Certification that he did not understand he was acting

19  as a statutory underwriter in relation to the Axis Technologies Group, Inc. stock, that he

20  trusted Luna's opinion on the matter, and that he "did not intend to violate the law."

21  (Montgomery Certification at 2.)  Montgomery's Certification comes after Montgomery

22  declined on Fifth Amendment grounds to answer questions at his deposition regarding

23  whether he relied on Luna's advice.  (See, e.g., Pl.'s Mot. Summ. J., Ex. 9 at 162.)

24  Nevertheless, the SEC did not seek summary judgment on the issue of scienter as to these

25  Defendants, and these Defendants now have presented contrary evidence under oath on the

26  issue.  The Court therefore will deem this factor as neutral or weighing slightly against a

1    permanent injunction.

2         Whether the Montgomery Defendants recognize the wrongful nature of their

3    conduct is ambiguous.  Although Montgomery states in his Certification that he understands

4    the Court's finding that he violated the law, he does not accept responsibility for his

5    participation, instead blaming Luna.  (Id.)  Elsewhere in their Opposition Brief, the

6    Montgomery Defendants suggest they caused no harm to the investing public.

7    (Montgomery Opp'n at 10.)  This factor is neutral or weighs slightly in favor of granting a

8    permanent injunction.

9         Montgomery no longer works in the securities field, and now works for an

10   architectural and interior design company.  (Montgomery Certification at 2-3.)

11   Montgomery also assures the Court he has matured and learned from his past mistakes.

12   (Id.)  Montgomery expresses a desire to not be involved in the securities arena in the future,

13   and assures the Court that he does not want to risk his future with his wife.  (Id. at 3-4.)

14   These factors weigh against imposing a permanent injunction.

15        Viewing the totality of the circumstances, the Court concludes the likelihood of

16   future violations, while not unsubstantial, is not sufficient to support the broad permanent

17   injunction that the SEC seeks against any future violations of Section 5 of the Securities

18   Act.  Montgomery has suffered considerable ramifications, both civilly and criminally, for

19   his prior securities-related activities.  Montgomery no longer will be working in the

20   securities arena, and assures the Court he has learned his lesson from the mistakes he made

21   as a young man.  To the extent Montgomery's assurances are insincere, he may face

22   prosecution or enforcement actions for any future violations regardless of whether the Court

23   imposes a permanent injunction barring him from further securities law violations under

24   Section 5.  As discussed below, the Court concludes a more targeted injunction barring the

25   Montgomery Defendants from future penny-stock offerings is more appropriate than the

26   general injunction against any Section 5 violation that the SEC requests.  The Court

1   therefore will decline to impose a permanent injunction from future Section 5 violations as

2   to the Montgomery Defendants.

3                    3.  The Daskivich and Murtha Defendants

4           Defendants Daskivich; Real Estate of Minnesota, Inc.; Murtha; and Matrix

5   Venture Capital (the "Daskivich and Murtha Defendants") respond that a permanent

6   injunction is inappropriate as to them because they did not act with scienter, rather they

7   relied on Luna's advice.  The Daskivich and Murtha Defendants further argue there is no

8   evidence of past violations as to them, and there is no basis to conclude these Defendants

9   would be statutory underwriters in the future.  The Daskivich and Murtha Defendants also

10  argue the likelihood of future violations is low because Daskivich no longer works in the

11  securities field, and both Defendants have submitted certifications to the Court assuring

12  they will not violate the securities laws in the future.

13          The SEC has not presented admissible evidence establishing the Daskivich and

14  Murtha Defendants engaged in a separate violation beyond the one alleged in this case, the

15  SEC has presented evidence the Daskivich and Murtha Defendants have associated with

16  other individuals who have engaged in separate penny-stock schemes, including

17  Montgomery who was convicted for participating in a pump and dump scheme with these

18  same individuals.  See S.E.C. v. Curshen, 888 F. Supp. 2d 1299, 1301-08 (S.D. Fla. 2012);

19  see also United States v. Curshen, No. 1:11-CR-20131-RWG, S.D. Fla., Plea Agreement for

20  Robert Weidenbaum (Doc. #184), Plea Agreement for Ryan Reynolds (Doc. #219), Plea

21  Agreement for Timothy Barham (Doc. #220), Factual Proffer (Doc. #222), Factual Proffer

22  (Doc. #223).  When asked about their association with these individuals, Defendants

23  Daskivich and Murtha invoked their Fifth Amendment rights.  (Pl.'s Mot. Summ. J., Ex. 6

24  at 71-72, 76-77; Ex. 10 at 58-59.)  While not conclusive evidence of a prior violation,

25  Defendants' association with others engaged in penny-stock pump and dump schemes

26  weighs in favor of imposing a permanent injunction.

For the same reasons as discussed above with respect to the Montgomery Defendants, the question of the degree of scienter is neutral or weighs slightly against granting a permanent injunction.  The evidence at summary judgment could support a finding of recklessness.  However, Murtha and Daskivich state in their Certifications that they did not understand they were acting as statutory underwriters in relation to the Axis Technologies Group, Inc. stock, and that they trusted Luna's opinion on the matter.  (Defs. Adam Daskivich, Real Estate Minnesota, Inc., David Murtha & Matrix Venture Capital, Inc.'s Opp'n to Pl.'s Request for Remedies (Doc. #114) ["Daskivich & Murtha Opp'n"], Certification of David Murtha ("Murtha Certification") at 2, Certification of Adam Daskivich ("Daskivich Certification") at 2.)  Defendants declined to answer questions on these topics at their depositions, invoking their Fifth Amendment rights.  (See, e.g., Pl.'s Mot. Summ. J., Exs. 6, 10.)  Nevertheless, the SEC did not seek summary judgment on the issue of scienter as to these Defendants, and these Defendants now have presented contrary evidence under oath on the issue.  The Court therefore will deem this factor as neutral or weighing slightly against a permanent injunction.

Whether the Daskivich and Murtha Defendants recognize the wrongful nature of their conduct is ambiguous.  Although these Defendants state in their Certifications that they understand the Court found they violated the law, they do not accept responsibility for their participation, instead blaming Luna.  (Murtha Decl. at 2, Daskivich Decl. at 2.) Elsewhere in their Opposition Brief, the Daskivich and Murtha Defendants suggest they caused no harm to the investing public.  (Daskivich & Murtha Opp'n at 5.) This factor is neutral or weighs slightly in favor of granting a permanent injunction.

Daskivich no longer works in the securities field, and now works in a custom tailoring business making men's clothing.  (Daskivich Certification at 2.)  Daskivich also assures the Court he has matured and is interested in pursuing his career outside the securities markets.  (Id.)  Daskivich states he will not engage in any future questionable or

illegal conduct in relation to the securities markets.  (Id. at 2-3.)

Murtha, on the other hand, does not attest that he has a career separate from the securities arena.  However, he asserts he has matured, and he assures the Court he will not engage in any questionable or illegal conduct.  (Murtha Certification at 2.)  These factors weigh against granting a permanent injunction.

Viewing the totality of the circumstances, the Court concludes the likelihood of future violations, though not unsubstantial, is not sufficient to support the broad permanent injunction that the SEC seeks against any future violations of Section 5 of the Securities Act.  Daskivich no longer will be working in the securities arena, and Daskivich and Murtha assure the Court they have learned from the mistakes they made as young men.  As with Montgomery, to the extent these assurances are insincere, they may face prosecution or enforcement actions for any future violations regardless of whether the Court imposes a permanent injunction barring them from further securities law violations under Section 5. As discussed below, the Court concludes a more targeted injunction barring the Daskivich and Murtha Defendants from future penny-stock offerings is more appropriate than the general injunction against any Section 5 violation that the SEC requests. The Court therefore will decline to impose a permanent injunction from future Section 5 violations as to the Daskivich and Murtha Defendants.

**B.  Disgorgement**

SEC requests each Defendant disgorge ill-gotten gains from their violations, which SEC calculates as the amount of profits from each Defendant's stock sales.  SEC contends the individual Defendants should be jointly and severally liable for the profits from his respective company.  SEC also contends Luna should be jointly and severally liable on the amounts that Real Estate Minnesota, Inc. and Matrix Venture Capital, Inc. diverted to Luna.  Finally, SEC seeks prejudgment interest at the rate provided in 26 U.S.C. § 6621 for tax underpayments from the date of Defendants' last trade of Axis Technologies

Group, Inc. stock through March 14, 2014, the date the SEC filed its Opening Brief.

The Court has "broad equity powers to order the disgorgement of ill-gotten gains obtained through the violation of the securities laws." S.E.C. v. First Pac. Bancorp, 142 F.3d 1186, 1191 (9th Cir. 1998) (quotation omitted). "Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable." Id. Where "individuals or entities collaborate or have a close relationship in engaging in the violations of the securities laws," the Court may hold them jointly and severally liable for the disgorgement of illegally obtained proceeds. Id. For example, an individual who played the principal role in the fraudulent activities, and who was the chairman of the board, chief executive officer, and majority shareholder of a corporation, enjoyed a close relationship with his corporate co-defendant sufficient to support joint and several liability. Id. at 1192.

The Court has broad discretion in determining the disgorgement amount. S.E.C. v. JT Wallenbrock & Assocs., 440 F.3d 1109, 1113 (9th Cir. 2006). The disgorgement amount need reflect only a "reasonable approximation of profits causally connected to the violation," and "should include all gains flowing from the illegal activities." Id. at 1113-14 (quotations omitted). "The SEC bears the ultimate burden of persuasion that its disgorgement figure reasonably approximates the amount of unjust enrichment." S.E.C. v. Platforms Wireless Int'l Corp., 617 F.3d 1072, 1096 (9th Cir. 2010) (quotation omitted). The SEC may meet this burden by establishing the total proceeds from the violations to establish a reasonable approximation of the ill-gotten gains. Id. at 1096-97.

If the SEC establishes a reasonable approximation of actual profits, "the burden shifts to the defendants to demonstrate that the disgorgement figure was not a reasonable approximation." Id. at 1096 (quotation omitted). The defendants bear this burden because they are "more likely than the SEC to have access to evidence establishing what they paid for the securities, if anything, to whom the proceeds from the sales were distributed, and for

what purposes the proceeds were used." Id. (stating "the risk of uncertainty should fall on the wrongdoer whose illegal conduct created that uncertainty" (quotation omitted)). Further, a "person who controls the distribution of illegally obtained funds is liable for the funds he or she dissipated as well as the funds he or she retained." Id. at 1098.

Finally, the Court has discretion to order prejudgment interest on the disgorgement amount. Id. at 1099. The Court may set the rate pursuant to the rate provided in 26 U.S.C. § 6621 for tax underpayments. Id. Additionally, the Court has discretion to calculate prejudgment interest from the date of the sales of the securities. Id. at 1099-1100.

### 1. The Luna Defendants

The Luna Defendants argue the SEC's disgorgement request is excessive because it does not offset legitimate business expenses Defendants incurred. The Luna Defendants also contend any prejudgment interest award must be recalculated based on any reduction in the disgorgement amount.

The Luna Defendants do not dispute that disgorgement is a proper remedy in this case, and the Court concludes disgorgement is appropriate as to the Luna Defendants. In the Court's prior Order (Doc. #108), the Court found no genuine issue of fact remained that Luna acted at least recklessly. Ordering the Luna Defendants to disgorge their ill-gotten gains is warranted both to deprive the Luna Defendants of unjust enrichment, and to deter others from violating securities laws. Additionally, it is appropriate to hold Luna jointly and severally liable with his wholly owned company through which he engaged in the illegal activity. Moreover, the Court, in its discretion, finds that Luna also should be jointly and severally liable for the disgorgement of amounts transferred to him by Defendants Real Estate Minnesota, Inc. and Matrix Venture Capital, Inc. As discussed in more detail in the Court's prior Order (Doc. #108), Luna collaborated with the other Defendants and Luna benefitted from the transfer of funds from fellow participants in the scheme. Failing to award disgorgement of these amounts would unjustly enrich Luna and would not fully

account for all gains flowing to Luna from his illegal activities.

As to the amount of disgorgement, the SEC has met its burden of establishing a reasonable approximation of profits by presenting evidence of Defendants' total proceeds. (Pl.'s Opening Br., Ex. 1.)  The burden thus shifts to the Luna Defendants to establish the SEC's disgorgement calculation is not a reasonable approximation of the Luna Defendants' profits.  Although the Luna Defendants contend the disgorgement amount should be offset by reasonable business expenses, the Luna Defendants present no evidence of any such expenses.  The Luna Defendants therefore have not met their burden of establishing the SEC's calculation is not a reasonable approximation of their ill-gotten gains.  The Luna Defendants also have not disputed the SEC's calculation of prejudgment interest, and the Court finds that amount reasonable.

The Court therefore will order the Luna Defendants to disgorge $3,904,089, reflecting proceeds from Defendant St. Paul Venture Fund's sales in the amount of $2,030,540, plus $1,750,728 and $122,821 transferred to Luna from Defendants Real Estate Minnesota, Inc. and Matrix Venture Capital, Inc.  The Court also will award prejudgment interest in the amount of $1,076,717.91, for a total disgorgement award of $4,980,806.91, for which Defendant Luna and Defendant St. Paul Venture Fund are jointly and severally liable.  Additionally, Defendant Luna is jointly and severally liable with the Daskivich Defendants for $2,233,565.38 of the total disgorgement amount, reflecting the payments these Defendants made to Defendant Luna plus prejudgment interest.  Defendant Luna also is jointly and severally liable with the Murtha Defendants for $156,694.12 of the total disgorgement amount, reflecting the payments these Defendants made to Defendant Luna plus prejudgment interest.

### 2.  The Montgomery Defendants

The Montgomery Defendants respond that the Court should exercise discretion and not order disgorgement because the Montgomery Defendants violated a strict liability

provision of the securities laws, the Montgomery Defendants acted on Luna's advice, and the Montgomery Defendants' conduct did "not caus[e] any harm to the investing public." (Montgomery Opp'n at 13.)  The Montgomery Defendants also argue that due to Montgomery's criminal conviction, Montgomery already owes over $8 million to the United States and he will be financially unable to satisfy further judgments.  The Montgomery Defendants also contend Montgomery paid $300,000 to acquire the Axis Technologies Group, Inc. shares and paid taxes on the sales, and these amounts should be deducted from the requested disgorgement amount.

Ordering the Montgomery Defendants to disgorge their ill-gotten gains is warranted both to deprive the Montgomery Defendants of unjust enrichment, and to deter others from violating securities laws.  Additionally, it is appropriate to hold Montgomery jointly and severally liable with his wholly owned company through which he engaged in the illegal activity.  The fact that the Montgomery Defendants were found to have violated a strict liability provision of the securities laws, as opposed to a provision that requires scienter, does not negate the propriety of disgorgement as a remedy.  The Montgomery Defendants' purported reliance on Luna's advice also does not persuade the Court that disgorgement is inappropriate.  Even accepting Montgomery's statement in his Certification as true despite Montgomery's assertion of his Fifth Amendment rights in response to SEC questioning on this topic during discovery, the fact remains Montgomery received ill-gotten gains through a violation of the securities laws.  Allowing him to retain those proceeds would not foster the goals of preventing unjust enrichment and deterring similar violations by others.

The Montgomery Defendants' position that they did not cause any harm to the investing public is unpersuasive.  The registration provisions are designed to protect the public, and Defendants evaded those protections to sell thousands of shares of an unregistered security to the investing public during a period in which the Axis Technologies

Group, Inc. stock price rose dramatically, resulting in nearly $2 million in proceeds for the Montgomery Defendants.  The suggestion that the Montgomery Defendants' violation of the registration provisions was merely technical with no real world consequences is unconvincing.

As to Montgomery's financial status, Montgomery already owes over $8 million to the United States, and thus may lack means to satisfy further judgments.  However, the Montgomery Defendants present no evidence of their financial condition.  In any event, the fact that a defendant has dissipated the ill-gotten gains should not relieve him of a disgorgement order, particularly because Montgomery is only thirty-three years old and he may become able to satisfy a judgment in the future.

Finally, the Court will not deduct $300,000 for the funds used to acquire the Axis Technologies Group, Inc. shares or any amount for taxes paid on the sales.  As discussed above, the SEC has met its initial burden of establishing a reasonable approximation of profits, and the burden shifted to Defendants to show that amount was unreasonable.  The Montgomery Defendants present no evidence that they were the source of the $300,000. The Montgomery Defendants also present no evidence of taxes paid.

The Court therefore will order the Montgomery Defendants to disgorge $1,970,956 in proceeds from Defendant Minnesota Venture Capital, Inc.'s sales.  The Montgomery Defendants have not disputed the SEC's calculation of prejudgment interest, and the Court finds that amount reasonable.  The Court therefore will award prejudgment interest in the amount of $543,574.58, for a total disgorgement award of $2,514,530.58, for which Defendant Montgomery and Defendant Minnesota Venture Capital, Inc. are jointly and severally liable.

### 3.  The Daskivich and Murtha Defendants

The Daskivich and Murtha Defendants argue disgorgement is an inappropriate remedy because they violated a strict liability provision, and thus disgorgement would not

serve a deterrent purpose.  These Defendants also argue the evidence shows Luna received the actual benefit of most of the funds the SEC attributes to Daskivich and Murtha, and thus they should not be ordered to disgorge the amounts transferred to Luna.  Additionally, Murtha contends he did not receive the benefit of $1,019,000 which was paid to an investor relation firm.  The Daskivich and Murtha Defendants assert they do not have the financial ability to pay the requested amounts.  Finally, they contend the SEC has failed to establish the Daskivich and Murtha Defendants victimized anyone.

As with the Montgomery Defendants, ordering the Daskivich and Murtha Defendants to disgorge their ill-gotten gains is warranted both to deprive the Daskivich and Murtha Defendants of unjust enrichment, and to deter others from violating securities laws.  Although these Defendants contend disgorgement offers no deterrence for violating a strict liability statute, ordering disgorgement in this case will encourage individuals to be more careful in complying with the registration requirements.  Additionally, it is appropriate to hold Daskivich and Murtha jointly and severally liable with their wholly owned companies through which they engaged in the illegal activity.

Similarly, these Defendants' purported reliance on Luna's advice does not persuade the Court that disgorgement is inappropriate.  Even accepting Daskivich and Murtha's statements in their Certifications as true despite their assertion of their Fifth Amendment rights in response to SEC questioning on this topic during discovery, the fact remains Daskivich and Murtha received ill-gotten gains through a violation of the securities laws.  Allowing them to retain those proceeds would not foster the goals of preventing unjust enrichment and deterring similar violations by others.  Additionally, the Court will not exclude the amounts these Defendants transferred to Luna.  The Daskivich and Murtha Defendants exercised control over the dissipation of the funds, and there is no evidence that they were required to transfer those funds to Luna.

///

Defendants' position that the SEC did not prove they caused harm to any particular investor is unpersuasive. The registration provisions are designed to protect the public, and Defendants evaded those protections to sell thousands of shares of an unregistered security to the investing public during a period in which the Axis Technologies Group, Inc. stock price rose dramatically, resulting in over $4 million in proceeds for these Defendants. The suggestion that Defendants' violations of the registration provisions were merely technical with no real world consequences is unconvincing.

The Daskivich and Murtha Defendants present no evidence of their financial condition. In any event, the mere fact that a defendant has dissipated the ill-gotten gains should not relieve him of a disgorgement order, particularly because these Defendants are in their thirties and they may become able to satisfy a judgment in the future.

Finally, the Court will not deduct $1,019,000 which Murtha contends was paid to an investor relation firm. As discussed above, the SEC has met its initial burden of establishing a reasonable approximation of profits, and the burden shifted to Defendants to show that amount was unreasonable. Murtha presents no evidence showing the funds were expended for a legitimate business purpose.

The Court therefore will order Defendants Daskivich and Real Estate of Minnesota, Inc. to disgorge $2,735,924 in proceeds from Defendant Real Estate of Minnesota, Inc.'s sales. The Daskivich Defendants have not disputed the SEC's calculation of prejudgment interest, and the Court finds that amount reasonable. The Court therefore will award prejudgment interest in the amount of $754,546.93, for a total disgorgement award of $3,490,470.93, for which Defendant Daskivich and Defendant Real Estate of Minnesota, Inc. are jointly and severally liable.

The Court also will order Defendants Murtha and Matrix Venture Capital, Inc. to disgorge $1,378,785 in proceeds from Defendant Matrix Venture Capital, Inc.'s sales. The Murtha Defendants have not disputed the SEC's calculation of prejudgment interest, and

the Court finds that amount reasonable.  The Court therefore will award prejudgment interest in the amount of $350,167.03, for a total disgorgement award of $1,728,952.03, for which Defendant Murtha and Defendant Matrix Venture Capital, Inc. are jointly and severally liable.

### C. Civil Penalties

The SEC requests the Court impose third tier civil penalties on all Defendants. The SEC contends Defendants engaged in a carefully planned scheme to reap substantial profits at the expense of the uninformed public.  The SEC also contends that because Defendants failed to produce evidence of their financial conditions during discovery, Defendants have not provided the Court with a basis to reduce the penalties.

Under the Securities Act or the Exchange Act, the Court may impose civil penalties upon a proper showing by the SEC.  15 U.S.C. §§ 77t(d)(1), §78u(d)(3)(A).  The statutes provide tiered options for determining the appropriate penalty.  See id. at §§ 77t(d)(2); 78u(d)(3).  First tier penalties are imposed for any violation of the securities laws.  Id. at §§ 77t(d)(2)(A); 78u(d)(3)(B)(i).  Second tier penalties are imposed for statutory violations which involve "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement."  Id. at §§ 77t(d)(2)(B), 78u(d)(3)(B)(ii).  Third tier violations are imposed for second tier violations which also "directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons."  Id. at §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii).  At each tier level, the penalty imposed shall not be greater than a specified amount for each tier, or the gross amount of pecuniary gain the defendant obtained a result of the violation.  Id. §§ 77t(d)(2), 78u(d)(3).  The Court determines the penalty amount "in light of the facts and circumstances."  Id. at §§ 77t(d)(2)(A), 78u(d)(3)(B)(I).

///

///

### 1.  The Luna Defendants

The Luna Defendants argue a civil penalty is not mandatory, and given the other remedies the SEC requests, a civil penalty would be excessive.  The Luna Defendants contend that having published judgments against them, combined with any bar orders the Court enters, are sufficient measures to punish the Luna Defendants and deter others.  The Luna Defendants also argue imposing a penalty is excessive because Luna previously has not had any misconduct in his twenty-year career as an attorney.

In light of the facts and circumstances of this case, the Court concludes second tier penalties are appropriate for the Luna Defendants.  The Court previously determined no genuine issue of material fact remains that the Luna Defendants violated Section 5 of the Securities Act, as well as Section 17(a)(1), (2), and (3) of the Securities Act, Section 10(b) of the Exchange Act, and Rule 10b-5.  In the Court's prior Order, the Court found no genuine issue of material fact remains that Luna "knew or recklessly disregarded that the entire process constituted an unregistered public offering not entitled to an exemption, yet he misrepresented the nature of the transaction to Holladay to obtain unrestricted, free trading shares to be sold to the general public."  (Order (Doc. #108) at 27.)  Imposing a civil penalty under these circumstances is appropriate to punish the Luna Defendants and to deter others from engaging in this conduct.

The Court need not decide whether third tier penalties are appropriate because, regardless, the Court would impose the same penalty amount.  Given the large number of stock sales, the Court finds imposition of the statutory fine amount for each violation would be excessive.  Instead, the Court will impose the gross amount of pecuniary gain to the Luna Defendants.  The Luna Defendants have presented no evidence of their financial condition to support reducing the penalty.  The Court therefore will impose a second tier penalty in the amount of $2,030,540.

///

### 2.  The Montgomery, Daskivich, and Murtha Defendants

The Montgomery, Daskivich, and Murtha Defendants contend the SEC's request for civil penalties is excessive because they did not act with scienter, they followed Luna's advise, and they do not have the means to pay the requested penalties.

In light of the facts and circumstances of this case, the Court concludes first tier penalties are appropriate for the Montgomery, Daskivich, and Murtha Defendants.  The Court previously determined no genuine issue of material fact remains that the Montgomery, Daskivich, and Murtha Defendants violated the registration provisions of Section 5 of the Securities Act, and thus they qualify for first tier penalties.  Defendants participated in a highly coordinated scheme and reaped substantial profits as a result. Imposing a civil penalty under these circumstances is appropriate to punish these Defendants and to deter others from engaging in this conduct.  A Section 5 violation has no scienter requirement, however, and the SEC did not move for summary judgment on the issue of whether these Defendants acted with any particular state of mind to support a second or third tier penalty.  These Defendants each have presented the Court with Certifications denying they had the requisite intent to support second and third tier penalties.  The SEC failed to move for summary judgment on the scienter issue, and the Court cannot make a credibility determination at this stage of the proceedings.  See M & A West, Inc., 538 F.3d at 1054-55.  The Court therefore concludes that only first tier penalties are appropriate for these Defendants.

As to the amount of penalties, given the number of stock sales at issue, imposing a penalty for each violation would be excessive.  Instead, the Court will impose the gross amount of pecuniary gain to each Defendant as a result of the violation.  These Defendants have produced no evidence of their financial condition to support reduction of the penalty. The Court therefore will impose a first tier penalty in the amount of $1,970,956 against the Montgomery Defendants, a first tier penalty in the amount of $2,735,924 against the

Daskivich Defendants, and a first tier penalty in the amount of $1,378,785 against the Murtha Defendants.

### D.  Penny-Stock and Legal Services Bar

The SEC seeks a penny-stock bar against all Defendants prohibiting them from participating in an offering of penny stock in the future.  The SEC also requests an order prohibiting Defendant Luna from providing professional legal services in connection with an offer or sale of securities pursuant to, or claiming, an exemption under Regulation D.

The Court may enter an order prohibiting a party from participating in a penny-stock offering against "any person participating in, or, at the time of the alleged misconduct who was participating in, an offering of penny-stock."  15 U.S.C. §§ 77t(g)(1), 78u(d)(6)(A).  In addition to the statutory authority to enter a penny-stock bar, the Court "has broad equitable powers to fashion appropriate relief for violations of the federal securities laws."  First Pacific Bancorp, 142 F.3d at 1193.  In determining whether to enter a bar order, the Court considers (1) the egregiousness of the underlying violation, (2) whether the defendant has previous violations, (3) the defendant's role in the violation, (4) the defendant's "economic stake in the violation," and (5) the likelihood the defendant will engage in future misconduct.  See id. (quotation omitted).

### 1.  The Luna Defendants

The Luna Defendants do not oppose a penny-stock bar.  (Luna Opp'n at 8.)  However, the Luna Defendants oppose a legal services bar, arguing that Luna's past record as an attorney, as well as his future ability to earn a living, weigh against imposing such a bar.

The Court concludes a penny-stock bar is appropriate as to the Luna Defendants.  As discussed previously, Luna acted with intent and gained over $2 million from his violations.  Additionally, Luna played the central role in the violation, as detailed more fully in this Court's prior Order.  (Order (Doc. #108) at 26-27.)  There is a high likelihood Luna

will engage in future misconduct.  In his Opposition Brief, Luna continues to defend his conduct in this case, and he requests the Court not impose a legal services bar so that he may continue to earn a livelihood engaging in similar work.  (Luna Opp'n at 2-4, 8-9.)  The Court therefore concludes that both a penny-stock bar and a legal services bar are appropriate.  Specifically, the Court will permanently enjoin the Luna Defendants from participating in an offering of penny stock, and will permanently enjoin Luna from providing legal services to any person in connection with an offer or sale of securities pursuant to, or claiming, an exemption under Regulation D, including, without limitation, participating in the preparation or issuance of any opinion letter related to such offerings. This narrowly tailored legal services bar will not preclude Luna from earning a living as an attorney, does not completely bar him from working in the field of securities law, and is targeted at Luna's misconduct in this case.

### 2.  The Montgomery Defendants

The Montgomery Defendants argue a penny-stock bar is not appropriate because Montgomery relied on Luna's advice.  The Montgomery Defendants also contend a penny-stock bar is not appropriate because Montgomery is not participating in the securities field, and he has acknowledged his mistakes in this case.

The evidence produced at summary judgment demonstrated that the Montgomery Defendants were active participants in a highly coordinated scheme through which they reaped nearly $2 million.  Additionally, Montgomery was involved in another stock scheme resulting in a criminal conviction.  Although Montgomery played a minor role when compared to Luna, he was not an insignificant player in the scheme.  Montgomery's assertion that he is no longer participating in the securities field weighs against imposing a bar, but there is a likelihood that Montgomery could engage in similar conduct in the future given his previous violation, his willingness to associate with individuals engaged in such schemes, the rapid realization of profits he enjoyed from his participation in these schemes,

and his willingness to blame Luna rather than acknowledge his own conduct.  Although the Court concludes, as discussed previously, that a general injunction prohibiting any Section 5 Securities Act violation is too broad, the Court finds a penny-stock bar to be appropriate as a narrowly tailored remedy to address the likelihood that the Montgomery Defendants will violate the Securities Act's registration provisions with respect to a penny-stock offering in the future.  The Court therefore will permanently enjoin the Montgomery Defendants from participating in an offering of penny stock.

### 3.  The Daskivich and Murtha Defendants

The Daskivich and Murtha Defendants argue a penny-stock bar is inappropriate because they unknowingly violated a strict liability provision and relied on Luna's advice. These Defendants thus contend there is little likelihood of a future violation, particularly for Daskivich who no longer works in the securities field.

As discussed with respect to the Montgomery Defendants, the evidence produced at summary judgment demonstrated that the Daskivich and Murtha Defendants were active participants in a highly coordinated scheme through which they reaped over $4 million. Although these Defendants played a minor role when compared to Luna, they were not insignificant players in the scheme.  Daskivich's assertion that he is no longer participating in the securities field weighs against imposing a bar, but there is a likelihood that Daskivich could engage in similar conduct in the future given his willingness to associate with individuals conducting such schemes, the rapid realization of profits he enjoyed from his participation in this scheme, and his willingness to blame Luna rather than acknowledge his own conduct.  These same concerns apply to Murtha, who does not indicate he no longer works in the securities field, thus raising a heightened possibility that Murtha will engage in future violations.  Although the Court concludes, as discussed previously, that a general injunction prohibiting any Section 5 Securities Act violation is too broad, the Court finds a penny-stock bar to be appropriate as a narrowly tailored remedy to address the likelihood

that the Daskivich and Murtha Defendants will violate the Securities Act's registration provisions with respect to a penny-stock offering in the future.  The Court therefore will permanently enjoin the Daskivich and Murtha Defendants from participating in an offering of penny stock.

## III.  CONCLUSION

IT IS THEREFORE ORDERED that Plaintiff Securities and Exchange Commission's Opening Brief in Support of Plaintiff Securities and Exchange Commission's Request for Remedies (Doc. #109) is hereby GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Defendants Marcus Luna and St. Paul Venture Fund LLC are hereby permanently enjoined from participating in an offering of penny stock.

IT IS FURTHER ORDERED that Defendant Marcus Luna is hereby permanently enjoined from providing legal services to any person in connection with an offer or sale of securities pursuant to, or claiming, an exemption under Regulation D, including, without limitation, participating in the preparation or issuance of any opinion letter related to such offerings.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Plaintiff Securities and Exchange Commission and against Defendant Marcus Luna and Defendant St. Paul Venture Fund as follows:

• $4,980,806.91 in disgorgement plus prejudgment interest, for which Defendant Luna and Defendant St. Paul Venture Fund are jointly and severally liable. Additionally, Defendant Luna is jointly and severally liable with the Daskivich Defendants for $2,233,565.38 of the total disgorgement amount, reflecting the payments these Defendants made to Defendant Luna plus prejudgment interest. Defendant Luna also is jointly and severally liable with the Murtha Defendants for $156,694.12 of the total disgorgement amount, reflecting the payments these

Defendants made to Defendant Luna plus prejudgment interest.

• $2,030,540 in civil penalties, for which Defendant Luna and Defendant St. Paul Venture Fund are jointly and severally liable.

IT IS FURTHER ORDERED that the Clerk of Court shall provide a copy of this Order and a copy of the Court's prior Order (Doc. #108) to the State Bar of California for such action, if any, it deems appropriate with respect to Defendant Marcus Luna who is a licensed member of the Bar.

IT IS FURTHER ORDERED that Defendants Nathan Montgomery and Minnesota Venture Capital, Inc. are hereby permanently enjoined from participating in an offering of penny stock.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Plaintiff Securities and Exchange Commission and against Defendants Nathan Montgomery and Minnesota Venture Capital, Inc. as follows:

• $2,514,530.58 in disgorgement plus prejudgment interest, for which Defendant Montgomery and Defendant Minnesota Venture Capital, Inc. are jointly and severally liable.

• $1,970,956 in civil penalties, for which Defendant Montgomery and Defendant Minnesota Venture Capital, Inc. are jointly and severally liable.

IT IS FURTHER ORDERED that Defendants Adam Daskivich and Real Estate of Minnesota, Inc. are hereby permanently enjoined from participating in an offering of penny stock.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Plaintiff Securities and Exchange Commission and against Defendants Adam Daskivich and Real Estate of Minnesota, Inc. as follows:

• $3,490,470.93 in disgorgement plus prejudgment interest, for which Defendant Daskivich and Defendant Real Estate of Minnesota, Inc. are jointly and severally

liable.

• $2,735,924 in civil penalties, for which Defendant Daskivich and Defendant Real Estate of Minnesota, Inc. are jointly and severally liable.

IT IS FURTHER ORDERED that Defendants David Murtha and Matrix Venture Capital, Inc. are hereby permanently enjoined from participating in an offering of penny stock.

IT IS FURTHER ORDERED that Judgment is hereby entered in favor of Plaintiff Securities and Exchange Commission and against Defendants David Murtha and Matrix Venture Capital, Inc. as follows:

• $1,728,952.03 in disgorgement plus prejudgment interest, for which Defendant Murtha and Defendant Matrix Venture Capital, Inc. are jointly and severally liable.

• $1,378,785 in civil penalties, for which Defendant Murtha and Defendant Matrix Venture Capital, Inc. are jointly and severally liable.

DATED:  June 27, 2014

_____
PHILIP M. PRO
United States District Judge